IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

UNITED STATES OF AMERICA,           Case No. 6:19-cr-00530-AA

**OPINION AND ORDER**

v.

THOMAS ROBERT MURPHY,

      Defendant.

___

AIKEN, District Judge:

This matter comes before the Court on defendant Thomas Robert Murphy's Motion to Dismiss (doc. 57). Defendant requests dismissal of the indictment in this case for various reasons including violations of the Speedy Trial Act, 18 U.S.C. § 3161. For the reasons set forth below, defendant's motion is DENIED.

**LEGAL STANDARD**

The Speedy Trial Act ("STA") provides that any information or indictment charging an individual with a crime shall be filed within thirty days from the date on which such individual was arrested. 18 U.S.C. § 3161(b). The STA contains a number of exclusions during which time is not calculated for the purposes of this requirement,

Page 1 – OPINION AND ORDER

several of which are relevant here. First, delay resulting from any proceeding, including examinations, to determine the defendant's mental competency shall be excluded. 18 U.S.C. § 3161(h)(1)(A). Second, any period of delay resulting from the unavailability of the defendant due to mental incompetency shall be excluded. 18 U.S.C. § 3161(h)(4). Finally, time is excluded when a court—on its own or by request of either party—finds "the ends of justice . . . served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A) (the "ends of justice" exclusion).

No exclusion may be granted because of "general congestion of the court's calendar, or lack of diligent preparation or failure to obtain available witnesses on the part of the attorney for the Government." 18 U.S.C. § 3161(h)(7)(C). If a defendant is not indicted within thirty days of the complaint being filed—after tallying the exclusions provided in § 3161(h)—the charges in such complaint must be "dismissed or otherwise dropped." 18 U.S.C. § 3162(a)(1). A court may dismiss the case with or without prejudice. 18 U.S.C. § 3162(a)(2).

## BACKGROUND

Defendant is charged with threatening the President of the United States, in violation of 18 U.S.C. § 871, and making interstate threats, in violation of 18 U.S.C. § 875(c).

As outlined in the indictment, on January 10, 2018, defendant posted on his Twitter account, @thenotepadalien, "Donald J. Trump will be terminated on March 7th, 2018, by my hand. Lucifer." Klein Aff. at 2. On the same day, defendant posted

from his Google+ account, "March 7th, 2018 Donald J. Trump will get shot in the face, head, and food. Dead, and gone forever." *Id.* Three days later, defendant posted again on Twitter: "What I'll do is kill secret service agents, like I've been. You can't stop me. YOU"RE THE ONES. TOMMY!" *Id.*[1]

On or about February 9, 2018, law enforcement officers contacted defendant at his residence in Springfield, Oregon. The interaction ended when defendant requested the agents leave and contact him by email. On February 15, 2018, defendant was charged by complaint (doc. 1) with making threats against the President and use of interstate communications to communicate a threat. Defendant was arrested on February 16, 2018 pursuant to a valid arrest warrant (doc. 5) and was ordered detained by Magistrate Judge Thomas Coffin. (doc. 6)

At a preliminary examination hearing on February 23, 2018, the government moved for a competency evaluation. (doc. 10) Magistrate Judge Jolie Russo granted the motion and on February 26, 2018, ordered defendant examined for competency and for insanity at the time of the offense. (doc. 13) At the February 23 hearing, defendant's attorney waived the preliminary hearing and ninety days under the STA to allow defendant to be evaluated and returned. 2/23/18 Tr. at 4.

On March 21, 2018, defendant arrived at the Federal Detention Center in SeaTac, Washington for a psychological examination. On May 18, 2018, Dr. Ryan Nybo reported his opinion to the Court that defendant was incompetent to stand trial because of schizophrenic delusions. At a status conference on May 23, 2018, the

---

[1] The affidavit states defendant's words verbatim, including errors.

parties waived forty-five days under the STA (doc. 16) On June 27, 2018, a competency hearing was set for July 17, 2018. (doc. 17) Following the competency hearing, Magistrate Judge Russo issued a written order finding defendant incompetent and directing him to the custody of the Attorney General for restoration proceedings. (docs. 18-19)

At a November 19, 2018 status conference, the parties reported that a bed had not yet become available at any Federal Medical Center ("FMC") for competency restoration. Also at the hearing, defense counsel waived an additional 120 days under the STA. (doc. 22) During a January 9, 2019 status conference, the government provided notice that defendant would be transported to FMC Springfield on March 7, 2019. (doc. 24); 1/9/19 Tr. at 3, 6. The Court ordered an additional 120 days excluded under the STA for restoration of competency starting March 7, 2019. *Id.*; 1/9/19 Tr. at 9, 10. On January 15, 2019, Federal Public Defender ("FPD") Susan Russell was substituted as defense counsel in place of FPD Mark Weintraub.

On March 21, 2019, defendant arrived at FMC Springfield. On March 27, 2019, Magistrate Judge Coffin excluded another 120 days under the STA. (doc. 31); 3/27/19 Tr. at 4. On July 17, 2019 defense counsel waived another thirty days to allow for completion of competency proceedings and filing of examinations. (doc. 33) 7/17/19 Tr. at 5. On August 19, 2019, FPD Susan Russell withdrew from the case and Criminal Justice Act ("CJA") Panel attorney Kristen Winemiller was appointed. (doc. 37). At an August 21, 2019 status conference, defense counsel waived an additional

sixty days under the STA which Magistrate Judge Mustafa Kasubhai ordered excluded. (doc. 38); 8/21/19 Tr. at 5.

On October 16, 2019, Magistrate Judge Kasubhai found defendant competent to stand trial based on his competency evaluation and the representation of counsel. (doc. 40); 10/16/19 Tr. at 4. Defense counsel waived and the court ordered forty-five days excluded under STA. *Id.* at 5. On November 20, 2019, a status conference was held before Magistrate Judge Kashubai. (doc. 41) A portion of the hearing was held *ex parte*, during which the court granted defense counsel's motion to withdraw. 11/20/19 Tr. at 20. Defendant also refused to waive any additional time under the STA. *Id.* On the following day, November 21, 2019, defendant was indicted by a federal grand jury. (doc. 42)

On December 3, 2019 CJA Panel attorney Matthew Schindler was appointed as counsel for defendant. (doc. 48) On December 4, defendant was arraigned on the present charges and entered a plea of not guilty. (doc. 49). On December 18, defendant was ordered released from custody with conditions pending trial. (doc. 53) On January 8, 2020, Magistrate Judge Kasubhai ordered another sixty days excluded in the interest of justice and defendant's jury trial was set for May 5, 2020 before Judge Ann Aiken. (doc. 54) On February 8, 2020 defendant filed a motion to proceed pro se in this matter.[2] (Doc. 55) The next day, defendant filed the present motion to dismiss for violations of the STA. (doc. 57).

---

[2] This Court held a hearing pursuant to *Faretta v. California*, 422 U.S. 806 (1975) on February 25, 2020 and granted defendant's motion (doc. 55) to proceed pro se. (doc. 58). Attorney Matthew Schindler was appointed as standby counsel. *Id.*

# DISCUSSION

Defendant argues that his indictment should be dismissed for violations of the STA, ineffective assistance of counsel, and deficiencies in the indictment. The Court will address each argument in turn.

I.   *Speedy Trial Act Violations*

Defendant contends that the periods of delay between his initial arrest and his ultimate indictment violate the thirty-day time limit under the STA. Specifically, defendant challenges the series of delays between the date he was found incompetent and the date his competency was restored.[3]

The thirty-day statutory period under 18 U.S.C. § 3161(b) for indictment in this case started on February 16, 2018 when defendant was arrested. Seven days later, on February 23, 2018, defendant was ordered to undergo a competency evaluation pursuant to 18 U.S.C. § 4241(b). (doc. 10) Thus, from February 23 until July 17, 2018 defendant's competency was being determined, and, accordingly, this

---

[3] Defendant also complains of his conditions of confinement in FCI Sheridan, FMC Springfield, the Springfield, Oregon Municipal Jail, the Polk County Jail, a Portland County Jail, and an Oklahoma County Jail. Defendant alleges that he was put in solitary confinement for weeks and argues that the general lack of facilities in the prisons constituted "torture." Essentially, defendant is making an argument for violations of the Eight Amendment. The Court will not address these arguments because they are not relevant to the calculation of time under the STA and are not adequately argued in the briefing. Moreover, "[h]abeas corpus proceedings are the proper mechanism for a prisoner to challenge the 'legality or duration' of confinement." *Badea v. Cox*, 931 F.2d 573, 574 (9th Cir.1991) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)). A civil rights action is the appropriate means of raising a constitutional challenge to the conditions of confinement. *Badea*, 931 F.2d at 574; *Preiser*, 411 U.S. 498–99. Those claims are separate and independent from the charges as alleged in the indictment.

time was automatically excluded under the STA pursuant to § 3161(h)(1)(A).[4] On July 17, 2018, defendant was found incompetent to stand trial and was remanded to the custody of the attorney general for competency restoration.

Defendant argues that delays in transport after his July 17, 2018 hearing until March 21, 2019, when he arrived at FMC Springfield for treatment, violate § 3161(h)(1)(F) of the STA. Section 3161(h)(1)(F) excludes "delay resulting from transportation . . . to or from places of examination or hospitalization," but also states that "any time in excess of ten days from the date of . . . an order directing such transportation, and the defendant's arrival at the destination shall be presumed unreasonable." Defendant argues that this provision means that when a defendant waits more than ten days for transportation there would be a violation of the STA. However, recent Ninth Circuit case law precludes defendant's argument. *See United States v. Romero*, 833 F.3d 1151, 1154 (9th Cir. 2016).

In *Romero*, the Ninth Circuit examined the interplay between the STA transportation provision cited by defendant and § 3161(h)(4) which provides that "[a]ny period of delay from the fact that the defendant is mentally incompetent" is excludable under the STA. *United States v. Romero*, 833 F.3d 1153-55. The defendant there, as here, argued that a three-month delay in transportation for

---

[4] Moreover, on February 23, 2018 defense counsel—with defendant present—waived ninety days for the competency examination to occur. 2/23/18 Tr. at 4. Defense counsel waived two more periods before defendant was deemed incompetent to stand trial: forty-five days on May 23, 2018 and thirty-five days on June 27, 2018. Defendant's argument that these waivers were the result of ineffective assistance of counsel are addressed in a separate section of this opinion.

competency restoration was violative of § 3161(h)(1)(F). *Id.* at 1154. However, the Ninth Circuit ruled that the entire period at issue was automatically excluded under § 3161(h)(4). *Id.* at 1155. The panel found that "the Speedy Trial Act unambiguously requires the exclusion of all time during which a defendant is incompetent to stand trial." *Id.* Any "other delays that may or may not occur during a period of incompetence are irrelevant to the Speedy Trial Act calculation; they cannot change the statutory bottom-line." *Id.* (footnote omitted).

In resolving the tension between § 3161(h)(4) and § 3161(h)(1)(F), the panel further explained that:

> The presumption that delays in excess of ten days are "unreasonable" is best understood merely to preclude the application of the transportation exclusion itself to the additional time. Where, as here, a different exclusion provision also applies, nothing in the statute suggests that it should not operate as usual.

*Id.* at 1156.

Defendant argues that *Romero* was wrongly decided and questions several other cases relied on by the government. This Court, however, is bound by published Ninth Circuit caselaw. Accordingly, the period between July 18, 2018, when defendant was found incompetent, and October 16, 2019, when defendant's competency was restored, is properly excluded from the STA calculation pursuant to § 3161(h)(4).

At the hearing on October 16, 2019, when defendant was found competent to stand trial, the Court ordered forty-five days excluded under the "ends of justice" exclusion, § 3161(h)(7)(a). 10/16/19 Tr. at 5. At this time, the STA clock was still at

seven days. Defendant's next status conference was scheduled for November 20, 2019—well within the forty-five days properly excluded by the Court in October.

At the November 20, 2019 status conference, defendant refused to waive any more time under the STA. He was formally indicted on November 21, 2019, the next day. Considering the many periods of statutorily excludable time, defendant's STA clock ran for eight days at most. Accordingly, the Court finds that there have been no violations of the STA in this case.

II.     *Ineffective Assistance of Counsel*

Defendant complains that he received ineffective assistance of counsel for a host of reasons including his attorneys' decisions related to the STA and defendant's competency. Def.'s Mot. Dismiss at 19. Ordinarily, claims of ineffective assistance of counsel are raised for the first time in a collateral proceeding under 28 U.S.C. § 2255. *United States v. Quintero-Barraza*, 78 F.3d 1344, 1347 (9th Cir. 1995); *see also Baumann v. United States*, 692 F.2d 565, 581 (9th Cir. 1982) ("we point out that this claim of ineffective assistance of counsel is one which is classically cognizable in a section 2255 proceeding").

Regardless of when an ineffective assistance of counsel claim is raised the standard of review is the same. Effectiveness of counsel is governed by a two-part doctrine set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). First, a defendant must demonstrate that his counsel's performance was deficient; and second, that the deficiency materially prejudiced his defense. *See Id.* at 687. To establish deficient performance, a movant must not only demonstrate that counsel

committed errors, but that counsel's performance "fell below an objective standard of reasonableness," and that counsel's acts or omissions were not the "result of a reasonable professional judgment." *Id*. at 690.

Defendant seems most concerned with his attorneys' waivers and repeated "refusals" to file motions to dismiss under the STA. Defendant asserts in his reply that his previous counsel erroneously waived time under the STA without his consent. But as explained above, almost all of the time excluded in this case was done so automatically under §§ 3161(h)(1)(A) and 3161(h)(4), and the remaining delay ordered after defendant was found competent was tolled under the "ends of justice" exclusion under § 3161(h)(7) on Magistrate Judge Kasubhai's own motion. None of these provisions require defendant's consent. *See United States v. Stoddard*, 74 F. Supp. 3d 332, 341 (D. D.C. 2014) (rejecting the defendant's ineffective assistance of counsel argument because the court, not defense counsel, determines when an STA continuance is appropriate). Thus, defense counsel's purported 'failures' to object to STA waivers are not deficiencies in performance which resulted in actual prejudice.

Relatedly, defendant fails to show how his counsel's decisions not to file motions to dismiss his indictment for violations of the STA amount to ineffective assistance of counsel. As discussed at length above, there were no STA violations in this case. His attorneys' decisions not to file a motion to dismiss on STA grounds were not deficient, and defendant's case was not prejudiced by their performance. "It is not ineffective assistance for counsel to fail (or refuse) to raise meritless claims." *United States v. Bennett,* 2011 WL 285221, at *5 (D. Or. Jan. 26, 2011) (citing *Bauman*

*v. United States* 692 F.2d at 572) Therefore, defendant would fail to satisfy either prong of the *Strickland* test under this argument.

While it was the government that moved for a competency determination in this case, defendant also argues that his previous counsel erroneously put his competency at issue before the government considered it. This was not deficiency. A reasonably competent attorney under these circumstances would have likely done the same, as many ineffective assistance of counsel claims are based on the failure to examine a defendant's competence. *See Vogt v. United States*, 88 F.3d 587, 592 (8th Cir. 1996) ("The failure of trial counsel to request a competency hearing where there was evidence raising a substantial doubt about a petitioner's competence to stand trial may constitute ineffective assistance of counsel") (citation omitted). Perhaps more importantly, defendant was found incompetent for a period and successfully underwent competency restoration treatment.

Accordingly, even if it were proper to consider this claim in a pre-trial setting, defendant's motion to dismiss on grounds of ineffective assistance of counsel is denied. Despite defendant's extensive briefing on his unsatisfactory experiences with his previous court-appointed attorneys, defendant has not satisfied either prong of the *Strickland* test nor has he shown that the proceedings were fundamentally unfair due to any of his attorneys' actions.

/ / /

/ / /

/ / /

III.  *Sufficiency of Indictment*

Defendant next argues that the government's indictment fails to state a claim. This argument is also without merit. "An indictment is sufficient if it contains the elements of the charged crime in adequate detail to inform the defendant of the charge, and to enable him to plead double jeopardy." *United States v. Morlan*, 756 F.2d 1442, 1444 (9th Cir. 1985). A valid indictment will not be dismissed for failure to state a claim without "a showing that the government flagrantly manipulated, overreached, or deceived the jury." *United States v. DeLuca*, 692 F.2d 1277, 1280 (9th Cir. 1982).

The indictment here outlines the factual allegations against defendant and the elements of both offenses. A defendant is liable under 18 U.S.C. § 871 if he knowingly or willfully makes a threat to take the life of, kidnap, or inflict bodily harm upon the President. The government must prove that the statement is a "true threat," which means that, under the circumstances, "a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of an intention to inflict bodily harm upon or take the life of the President." *United States v. Romo*, 413 F.3d 1044, 1051 (9th Cir. 2005) (citations omitted). Count One of the indictment states that on January 10, 2018,

> Thomas Robert Murphy, did knowingly and willfully make a threat to take the life of, kidnap, and inflict bodily harm upon the President of the United States, specifically, by posting on the internet: a. "Donald J. Trump will be terminated on March 7th, 2018 by my hand. Lucifer"; and b. "March 7th, 2018 Donald J. Trump will get shot in the face, head, and foot. Dead, and gone forever."

Indictment (doc. 42).

The indictment alleges that defendant knowingly posted, in writing on the internet, a threat against the President. A reasonable person would foresee that these words—including specific injuries on a particular date—would be understood by others who read these online statements as a serious expression of defendant's intent to injure and kill the President.

Defendant appears to argue that his statements are not true threats unless they are received by the President himself. This argument runs contrary to binding Ninth Circuit case law.[5] *See Romo*, 413 F.3d at 1051 ("The statute does not require receipt of the threat by the intended recipient."). Defendant also argues that the government must prove that he intended to harm the President. This argument is precluded by *Roy v. United States*, 416 F.2d 874, 878 (9th Cir. 1969) (holding that the statute requires only that the defendant intentionally made the statement, not "that the defendant actually intend[ed] to carry out the threat.").

Count two, violation of 18 U.S.C. § 876(c), requires the government to allege: (1) that the communication was sent in interstate commerce; and (2) the defendant intended to transmit the communication; and (3) the defendant had the purpose of issuing the threat or the knowledge that the communication would be viewed as a threat. *See Elonis v. United States*, 135 S. Ct. 2001, 2011 (2015). The indictment states that defendant knowingly transmitted in interstate commerce—via posting on

---

[5] Numerous historical cases, including one cited by defendant, preclude his argument. A person may be convicted for threatening the President even if that threat was never communicated to or received by the President. *See, e.g., United States v. Stobo*, 251 F.689, 692 (D. Del. 1918); *United States v. Jasick*, 252 F.931, 933 (E.D. Mich. 1918); *United States v. Stickrath,* 242 F.151 (S.D. Ohio 1917).

the internet—a threat to shoot the President of the United States and kill Secret Service agents.

Defendant argues that his indictment is improper because it fails to include information as to "who heard the alleged statement(s)." Def.'s Mot. Dismiss at 24. Defendant cites cases from the early twentieth century to support his theory that the indictment is "fatally defective" because it fails to allege the threats were "uttered in the presence of other persons." Def.'s Mot. Dismiss at 25. Defendant relies on cases that are inapt; defendant's threats were written on multiple online platforms with millions of users. That defendant did not intend—and the government did not identify—a particular recipient is irrelevant. *See United States v. Kelner*, 534 F.2d 1020, 1023 (2d Cir. 1976) (rejecting appellant's argument that "the broadcast of the threat to an indefinite and unknown audience is not a 'communication' of that threat" under 18 U.S.C. § 875c). The relevant inquiry under the statute is whether defendant intended to communicate his threat, not whether the threat was received by a particular person or an "indefinite and unknown audience." *Id*. The indictment alleges that defendant knowingly and intentionally posted several statements about injuring and killing the President and members of the Secret Service. Count Two therefore also survives defendant's motion to dismiss for failure to state a claim.

In sum, the indictment pleads enough facts to allow defendant to understand the charges against him, and there is no showing of flagrant manipulation by the government. For these reasons, defendant's motion to dismiss the indictment for failure to state a claim is denied.

IV. *Miscellaneous Issues*

Since the Court entered the present briefing schedule on this motion, defendant was arrested on March 18, 2020 and ordered detained on March 19, 2020 after being found in violation of his conditions of pre-trial release. Defendant has filed three motions while in custody. First, he has filed a second motion to dismiss the indictment in this case (doc. 84), a motion for subpoenas and witness fees at government expense (doc. 85), and a motion for release from custody pending trial. (doc. 86) In his motion to dismiss, defendant raises alleged speedy trail violations similar those made in his first motion. Based on previous analysis in this opinion, the motion to dismiss (doc. 84) is DENIED. The Court will consider the other two motions at a telephone hearing to be scheduled at the convenience of the parties.

## CONCLUSION

For the reasons set forth herein, defendant's motion to dismiss the indictment (doc. 57) is DENIED.

IT IS SO ORDERED.

Dated this  9th  day of April, 2020.

                              /s/Ann Aiken
                              Ann Aiken
                    United States District Judge